[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO STRIKE
On November 4, 1987, plaintiff Bristol Savings Bank (hereinafter the Bank) filed a mortgage foreclosure proceeding against the defendant, Maryse Szydlowski (hereinafter Szydlowski), as owner of the equity of redemption, and other defendants, concerning property located in Farmington. On December 6, 1989, Szydlowski amended her answer to include a three-count counterclaim; a revised counterclaim was filed on January 17, 1990.
In Count One of the revised counterclaim, Szydlowski alleges that the Bank, in a prior foreclosure action on the same property, breached its duty to Szydlowski, the assignee of CT Page 4511 a named defendant in the prior action, by negligently failing to reveal in that foreclosure complaint that it held a second mortgage on the property. Szydlowskik further alleges in Count One that "[i]n redeeming the property, Maryse L. Szydlowski justifiably relied upon the representations in plaintiff's writ and complaint in the First Foreclosure that all encumbrances of record were disclosed, pursuant to Connecticut Practice Book 186."
In Count Two of the counterclaim, Szydlowski alleges that the Bank intentionally and falsely represented to Szydlowski "that all encumbrances subsequent in interest to the first mortgage held on the property by Plaintiff were disclosed in its First Foreclosure complaint," and that "Plaintiff made said representations in order to induce Maryse Szydlowski to redeem the property."
Szydlowski alleges in Count Three that the Bank violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stats.42-110a et seq. (CUTPA) in the following ways. Szydlowski alleges that the Bank submitted to the court, in the present foreclosure action, only a 1986 appraisal of the property that valued the property at $450,000,000 despite full knowledge of a 1984 appraisal that valued the property at $550,000.00 and "the rapid escalation of real estate values between the time of the First Appraisal in 1984 and the Second Appraisal in 1986." Szydlowski further alleges that plaintiff arranged to "lay off" holders of a subsequent encumbrance on the property in exchange for their agreement not to move for a foreclosure by sale, "thereby preventing encumbrancers of record from realizing money due them and causing them to expend sums of money to defend their priority positions in this foreclosure action." Szydlowski further alleges that the Bank violated CUTPA by failing to list all encumbrances of record in its original foreclosure pleadings and refusing to accept Szydlowski's check tendered to redeem the property until it had subordinated its first mortgage to its second mortgage.
Szydlowski seeks money damages for the costs, including attorney's fees, expended to clear the title to her property.
The plaintiff Bank has moved to strike all three counts of Szydlowski's counterclaim on the following grounds: (1) Count One fails to state a cause of action because the Bank owed no duty to Szydlowski to list its second mortgage in the previous foreclosure; (2) Count Two fails to state a cause of action because the bank's complaint in the previous foreclosure does not constitute a false representation, and any representations contained in the first foreclosure complaint cannot possibly have been made to induce Szydlowski to redeem CT Page 4512 the property; (3) Count Three fails to state a cause of action because the Bank's actions do not constitute CUTPA violations.
Memoranda of law in support of and opposition to the motion, as required by Conn. Practice Book 155, have been filed.
A motion to strike is used to challenge the legal sufficiency of the factual allegations of a pleading. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). A motion to strike admits all facts well-pleaded, and those facts are to be construed most favorably to the pleader. Id. If the factual allegation would support a cause of action, the motion to strike must be denied. Mingachos v. CBS, Inc.,196 Conn. 91, 109 (1985).
Conn. Practice Book 116 states in pertinent part that "[i]n any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . . ."
"An action of foreclosure is peculiarly equitable and the court may entertain all questions which are necessary to be determined in order that complete justice may be done between the parties." Hartford Federal Savings and Loan Assn. v. Tucker, 196 Conn. 172, 175 (1985). "One who seeks equity must also do equity and expect that equity will be done for all." LaCroix v. LaCroix, 189 Conn. 685, 689 (1983).
While the plaintiff's counterclaim does not arise out of the transaction which is the subject of the plaintiff's complaint, the foreclosure of the Bank's second mortgage, the issues raised in Szydlowski's counterclaim are so intrinsic to the fairness of the second foreclosure action that this court may entertain the counterclaim under the reasoning of the courts in Tucker and LaCroix.
As to the first count in Szydlowski's counterclaim alleging the Bank's negligence in failing to disclose its second mortgage in the first foreclosure action, the Bank argues in its supporting memorandum that it owed no duty to Szydlowski to disclose its second mortgage and therefore it could not have been negligent. The bank further argues that the requirement of Conn. Practice Book 186 that a foreclosure complaint set forth all encumbrances of record did not impose a legal duty upon the Bank to disclose its second mortgage in its first foreclosure complaint; the Bank points to Conn. Gen. Stats. 49-30, which provides for situations where a subsequent CT Page 4513 encumbrance has been omitted from a foreclosure action as additional support for this argument. The Bank also argues that since Szydlowski is presumed to have been aware of the existence of the Bank's second mortgage by virtue of its being recorded upon the land records, the Bank could not reasonably have foreseen that Szydlowski, a new party to the first foreclosure, would be injured by the omission of the second mortgage.
In response, Szydlowski argues in her memorandum in opposition that the practice book rules create affirmative legal duties; that harm in the form of economic injury to a subsequent encumbrance was foreseeable; that the Bank had an affirmative loyal and ethical duty to correct its pleadings and that the fact that Szydlowski could have discovered the second mortgage through the land record does not excuse the Bank's negligence.
The existence of a duty is a question of law. Gordon v. Bridgeport Housing, 208 Conn. at 171 "`A duty to use care may arise from . . . circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act."' Calderwood v. Bender,189 Conn. 580, 584 (1983), quoting Coburn v. Lenox Homes, Inc.,186 Conn. 370, 375 (1982).
Conn. Practice Book 186 states in pertinent part:
 The complaint in all actions seeking the foreclosure of a mortgage or other lien upon real estate shall set forth, in addition to the other essentials of such complaint: All encumbrances of record upon the property both prior and subsequent to the encumbrance sought to be foreclosed, the dates of such encumbrances, the amount of each and the date when such encumbrance was recorded . . . . (Emphasis added).
The first count of the counterclaim alleges sufficient facts for the court to find that the Bank owed a duty to the subsequent encumbrances in the first foreclosure action to disclose its second mortgage. The bank, when bringing its first foreclosure action, knew or should have known that a subsequent encumbrancer, or its assignee, in deciding whether to exercise its right to redeem, would consider those superior encumbrances as disclosed in the foreclosure complaint and such a redeeming encumbrancer would incur expenses in defending the title should one of these superior encumbrances subsequently CT Page 4514 bring a foreclosure action.
Conn. Gen. Stats. 49-30 provides in pertinent part:
 When a mortgage or lien on real estate has been foreclosed and one or more parties owning any interest in or holding an encumbrance on such real estate subsequent or subordinate to such mortgage or lien has been omitted or has not been foreclosed of such interest or encumbrance because of improper service of process or for any other reason, all other parties foreclosed by the foreclosure judgment shall be bound thereby as fully as if no such omission or defect had occurred and shall not retain any equity or right to redeem such foreclosed real estate. Such omission or failure to properly foreclose such party or parties may be completely cured and cleared by deed or foreclosure or other proper legal proceedings to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party or parties thus not foreclosed, or their respective successors in title.
The provision in Conn. Gen. Stats. 49-30 for omitted parties does not grant to the Bank an affirmative right to withhold disclosure of a second mortgage known to the Bank, and in this case held by the Bank itself, in light of the requirement in Practice Book 186 to disclose all encumbrances of record.
The Bank's motion to strike Count One of the counterclaim on the ground that it owed no duty to Szydlowski is denied.
In its memorandum of law in support of its motion to strike, the Bank argues that the second count of the counterclaim alleging the fraudulent nondisclosure of its alleged second mortgage should be stricken because fraud based on nondisclosure is found only in exceptional cases and no exceptional circumstances exist in spite of the requirements of Conn. Practice Book 186 that would have imposed a duty to disclose. The Bank further argues that reliance that is reasonable is an essential element of a fraud action and "Mrs. Szydlowski could not, as a matter of law, have reasonably relied on the Bank's failure to list the alleged second mortgage in the First Foreclosure complaint in her decision to redeem the subject property." The Bank argues that because Szydlowski had constructive, if not actual, notice of the CT Page 4515 second mortgage from the land records, she cannot claim to have been fraudulently induced by the omission.
In response, Szydlowski argues that a foreclosure complaint is an affirmative representation to the court, to the parties and to the public as to all of the encumbrances which exist on the land records and that Szydlowski had relied on the Bank's representation that it had listed each and every encumbrancer. Szydlowski further argues that foreclosure action is an exceptional circumstance in the area of sales of real estate and that the circumstances of a complaint in strict foreclosure give rise to a clear duty to speak and thus the bank's silence is actionable.
"To constitute fraud by nondisclosure or suppression, `there must be a failure to disclose known facts and . . . a request or an occasion or a circumstance which imposes a duty to speak."' Jackson v. Jackson, 2 Conn. App. 179, 194 (1984), quoting Duksa v. Middletown, 173 Conn. 124, 127 (1977). "The key element in a case of fraudulent non-disclosure is that there must be circumstances which impose a duty to speak." Id. at 194.
The circumstance imposing a duty upon the Bank to speak in this case is the requirement of Conn. Practice Book 186 that all encumbrances of record be set forth in a foreclosure complaint. The Bank, in failing to disclose the second mortgage, withheld "known facts." Therefore, the second count of Szydlowski's complaint has alleged sufficient facts to state a cause of action in fraudulent nondisclosure, and the Bank's motion to strike the second count should be denied.
With regard to the third count of the counterclaim, which alleges violations of CUTPA, the Bank argues in its memorandum of law that the alleged intentional failure of the Bank to list all encumbrances of record in the first foreclosure action is not a violation of CUTPA because by the terms of CUTPA found at Conn. Gen. Stats. 42-110a(4), "trade" and "commerce" do not encompass a lawsuit. The Bank further alleges that Connecticut courts have repeatedly held that the filing of a single non-sham lawsuit cannot form the basis for a lawsuit under CUTPA.
Szydlowski argues in her opposing memorandum of law that the Bank's conduct at issue was unethical and unscrupulous and caused substantial injury to a consumer. She further argues that the sale of a home and the conduct of the Bank's business constitutes the trade and commerce at issue in these cases. Additionally, Szydlowski contends that it is not the filing of the first foreclosure complaint per se which is complained of CT Page 4516 but rather the Bank's conduct in bringing and maintaining litigation under false pretenses.
"CUTPA provides that `[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.' General statutes 42-110b(a)." Web Press Services Corporation v. New London Motors, Inc., 203 Conn. 342, 354 (1987). Conn. Gen. Stats. 42-110a(4) defines "trade" or "commerce" to mean "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article commodity, or thing of value in this state." The legislature has expressly provided that "`[i]t is the intention of the legislature that this chapter be remedial and be so construed."' Web Press Services Corporation v. New London Motors, Inc., 203 Conn. at 354.
The following factors are to be considered in determining whether an action or practice is unfair:
 (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;
 (2) Whether it is immoral, unethical, oppressive, or unscrupulous;
 (3) Whether it causes substantial injury to consumers.
Conway v. Prestia, 191 Conn. 484, 492-93 (1983).
It is not necessary for all three criteria to be satisfied to support a finding of unfairness; a practice may be unfair because of the degree to which it meets one of the criteria or to a lesser extent it meets all three. Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 242 (1987).
In both construing the allegations of the counterclaim in Szydlowski's favor and considering the legislative intent that CUTPA be remedially construed, the allegations of the third count would support a CUTPA action.
There is a split of authority in the Superior Court on whether the provisions of CUTPA apply to banks. CUTPA was CT Page 4517 found to apply to banks in Shirley A. Pia v. Midconn Bank 
Security of American Life Insurance Co., 4 CSCR 143 (1989, Dorsey, J.), Linda Wright et al. v. The Bank of Darien,3 CSCR 253 (1989, Harrigan, J.), while the opposite holding was made in Bristol Savings Bank v. Thomas Sattler, et al. 4 CSCR 351
(1989, Aronson, J.), People's Bank v. Joseph F. Horesco,1 CSCR 62 (1986, Jacobsen, J.). In light of the remedial nature of CUTPA this court adopts the view of these courts finding that CUTPA applies to banking institutions.
Further, given the remedial nature of CUTPA, the terms "trade" and "commerce" can be construed to encompass the Bank's foreclosure action in the present case. The Bank's alleged conduct in failing to disclose its second mortgage in the first foreclosure action, could be considered immoral, unethical, oppressive or unscrupulous and cause substantial injury to consumers, thus satisfying the second and third factors spelled out in Conway v. Prestia. The Bank's motion to strike the third count of Szydlowski's counterclaim on the ground that it fails to allege facts constituting a violation of CUTPA is denied.
In conclusion, Szydlowski's counterclaim has alleged sufficient facts to support a cause of action in negligence, fraudulent misrepresentation and CUTPA and the Bank's motion to strike is denied.
O'CONNOR, J.